U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 12 CR 596 |
| EUGENE MULLINS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 28, 2013, County of Cook ("Cook County"), a non-party respondent to two subpoenas *duces tecum*, filed a motion to quash subpoenas it received on April 16, 2013 and May 7, 2013 ("Cook County Subpoenas"). (R. 78, Cook Mot.) On May 29, 2013, the Cook County Office of the Independent Inspector General ("OIIG"), a non-party recipient of two subpoenas *duces tecum*, filed a motion to quash subpoenas it received on April 16, 2013 and May 7, 2013 ("OIIG Subpoenas"). (R. 80, OIIG Mot.) Because the motions present overlapping issues, the Court addresses both here. For the reasons below, the Court grants both motions to quash.

## BACKGROUND

On August 1, 2012, a grand jury indicted Defendant Eugene Mullins with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of corrupt solicitation, in violation of 18 U.S.C. § 666(a)(1)(B). (R. 1.) According to the government:

> [a]ll eight counts in which Mullins is charged relate to three types of professional and managerial service contracts awarded by Cook County in 2010: (1) a series of Census Contracts awarded to promote awareness and increase response rates by Cook County

residents for the 2010 United States Census; (2) a series of Disaster Grant Contracts awarded to promote awareness and assist Cook County residents impacted by the floods of 2008; and (3) a series of Energy Grant Contracts awarded to promote energy efficiency and conservation in Cook County.

(R. 83, Gov't Resp. at 2.) The indictment charged Defendant Mullins with assisting others in submitting false and fraudulent documents to Cook County to obtain these contracts. The Federal Bureau of Investigation and the OIIG are conducting an ongoing joint investigation, together with the United States Attorney's Office and the Cook County State's Attorney's Office, into these three types of contracts and similar contracts, commonly known as the "24-9 contracts."[1] (*Id*. at 2.)

The government represents that, since the indictment, it has "made a voluminous and substantial production of documents and materials to the defendant pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 16.1." (Gov't Resp. at 2.) "Specifically, the government produced three compact disks, together with a corresponding 11-page index, containing reports of interviews, documents, bank records, e-mail files, and other materials" as well as "literally dozens and dozens of relevant reports and materials pursuant to Rule 16, including reports generated by the FBI as well as [OIIG] and State's Attorney investigators." (*Id*. at 3.)

## LEGAL STANDARD

Federal Rule of Criminal Procedure ("Rule") 17(c)(2) provides that a "court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. Crim. P. 17(c)(2). According to the Supreme Court, to require production of certain material prior to trial,

---

[1] Notably, Defendant Mullins' subpoenas reference the "24-9 contracts" but he does not identify or explain in those subpoenas or in his response briefs what the 24-9 contracts are.

the moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*U.S. v. Nixon*, 418 U.S. 683, 699, 94 S. Ct. 3090, 41 L. Ed. 2d 2039 (1974); *see also U.S. v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002); *U.S. v. Kashmiri*, No. 09 CR 830-4, 2011 WL 1326373, at *4 (N.D. Ill. Apr. 01, 2011).

## ANALYSIS

**I.    The Subpoenas**

On April 16, 2013, the Cook County Department of Information Technology received a subpoena ("IT Subpoena") from Defendant Mullins commanding it to produce:

> Emails generated by Joseph Fratto as Chief of Staff for Cook County under former Cook County President Todd Stroger specifically emails between Joseph Fratto and the following:
>
> Jay Morgan-Williams
> Pat Blanchard
> Todd Stroger
> Al Pritchett
> Anthony Bass
> Laura Lechowicz
> Eugene Mullins

(R. 78-1, Ex. A, IT Subpoena.) Cook County moves to quash the IT Subpoena "on the basis that the language and materials, as well as the information, time frame and subject matter sought, is vague, overly broad, burdensome, irrelevant, and lacking in sufficient specificity and admissibility." (Cook Mot. ¶ 1.) Cook County further notes that the "sought documents may or may not contain privileged, deliberative process or work-product communications, which at this

3

point is unascertainable due to the vagueness of the request." (*Id*.)

On May 7, 2013, the Cook County Purchasing Department received a subpoena ("Purchasing Subpoena") from Defendant Mullins commanding it to produce:

> All email, notes[,] conversations, [and] memoranda concerning the investigation of the 24-9 contracts.
>
> All solicitations, proposals, justification letters and invoices related to and concerning the Circuit Court of Cook County Mortgage Foreclosure Mediation Program approved by the Board of Commissioners of Cook County as items 31, 32, 33, and 34 of the Post Board Action Agenda during the Meeting of March 2nd, 2010.
>
> A list of ALL contractors and subcontractors awarded contracts or paid recipients of the Circuit Court of Cook County Mortgage Foreclosure Mediation Program.

(R. 78-2, Ex. B, Purchasing Subpoena.) Cook County moves to quash the request for "All email, notes . . ." because the "language and materials, as well as the information sought is undeterminable, vague, overly broad, burdensome, oppressive, irrelevant, lacking in specificity and admissibility." (Cook Mot.¶ 2.) Cook County seeks to quash the remainder of the Purchasing Subpoena because "the allegations in this case do not touch in any way on the Cook County Mortgage Foreclosure Mediation Program." (*Id*.) Cook County further argues that the IT Subpoena and Purchasing Subpoena are a blind fishing expedition. (*Id*. ¶ 3.)

On April 16 the OIIG received a subpoena ("OIIG Subpoena 1") from Defendant Mullins commanding it to produce:

> All notes, emails, interview reports, audio interviews, memoranda, reflections, and investigatory reports associated with 24-9 contracts investigations involving Dr. Eugene Mullins. This includes all documents or correspondence with Senator Mark Kirk, Senator Mike Quigley, John Daley, Forest Claypool [sic], Larry Sufferdin [sic] and Laura Lechowicz, Joseph Fratto, Leticia Close, Chris Geovannis, Sean Howard, Annette Goldsmith and Jaye Morgan-Williams regarding the 24-9 contracts involving Dr. Eugene Mullins.

(R. 80-1, Ex. 1, OIIG Subpoena 1.) On May 7, 2013, the OIIG received another subpoena

("OIIG Subpoena 2") from Defendant Mullins commanding it to produce:

> All anonymous emails sent to the Cook County Inspector General's Office during the period January 2009 through January 2011.

(R. 80-2, Ex. 2, OIIG Subpoena 2.) The OIIG seeks to quash the OIIG Subpoenas 1 and 2 for three reasons: (1) any productions of documents by the OIIG should be made through the U.S. Attorney's Office, not pursuant to subpoena; (2) the subpoenas are overly broad, oppressive, and unreasonable; and (3) the subpoenas lack relevancy, admissibility, and specificity. (R. 80, OIIG Mot. ¶¶ 2-10.) The OIIG further objects to OIIG Subpoena 1 on work product and law enforcement privilege grounds because the OIIG's investigation into the 24-9 contracts remains open. (*Id.* ¶ 12.) In addition, the OIIG argues that turning over the materials sought by OIIG Subpoena 1 would risk interfering with or jeopardizing the integrity of a federal prosecution of Defendant Mullins as well as an ongoing criminal prosecution of another defendant in *People v. Oglesby* (10 CR 21241). (*Id.* ¶ 17.)

The United States filed a response to – and in support of – the OIIG and Cook County's motions to quash. (R. 83, Gov't Resp.) The United States argues that the Cook County Subpoenas and the OIIG Subpoenas "run afoul of Rule 17 for at least three reasons." (*Id.* at 4.) Specifically, the United States argues that (1) the subpoenas are exceptionally overbroad and lack requests for particular items or for materials from particular time frames; (2) the specific requests – such as materials related to the Mortgage Foreclosure Mediation Program – are wholly irrelevant to the charges; and (3) certain materials "are associated with the government's ongoing law enforcement investigation, the disclosure of which would compromise the successful progress of the investigation." (*Id.* at 4-5.)

## II. The Propriety of the Subpoenas

Despite having filed three briefs regarding the motions to quash[2] – one in response to the OIIG's motion, one in response to Cook County's motion, and one in response to the government's response to those motions – Defendant Mullins has not shown that the requested documents are relevant to his case – a threshold requirement for pre-trial production. *See Nixon*, 418 U.S. at 699. Rather, Defendant Mullins offers a disjointed and confused argument that these documents are relevant because the people named in the subpoenas are "political operatives" whose collusion resulted in his arrest and indictment. (*See, e.g.,* R. 84, Resp. to Cook ¶¶ 2, 5, 6, 7; R. 85, Resp. to OIIG ¶ 6.) He does not explain, however, what he means by "political operatives" or how, assuming these "operatives" initiated or furthered the government's investigation into his conduct as he claims, their actions are relevant to his case or to his ability to defend his case. *See, e.g., Jones v. Basinger*, 635 F.3d 1030, 1051 (7th Cir. 2011) ("the reasons the police began investigating Jones were not relevant to the issue of Jones' guilt or innocence"). He also claims that the anonymous emails he seeks from the OIIG contain evidence of "criminal conduct of other high ranking employees of Cook County." (Resp. to OIIG ¶ 9.) He does not explain, however, how such criminal conduct – even if it occurred – is relevant to his case. He also does not suggest that any of these employees will testify at trial. Notably, if any of these people had participated in criminal conduct relevant for impeachment during trial, the subpoena would be unnecessary for any materials the government possesses or

---

[2] On June 14, 2013, Defendant Mullins also filed a sur-reply – a response to the reply Cook County submitted – without seeking leave of Court and after the reply deadline of June 13, 2013. (R. 91, 82.) The Court will not address any additional arguments contained in that improperly filed sur-reply.

of which it has knowledge since it already has an obligation to tender such material to Defendant Mullins. *See, e.g., Kashmiri* at *4 (citing *U.S. v. Carter*, 65 Fed. Appx. 559, 561 (7th Cir. 2003)). Indeed, the government "has acknowledged and continues to acknowledge its ongoing duty to disclose evidence favorable to the defendant in this case." (Gov't Resp. at 3.)

Defendant Mullins offers other inapposite arguments attempting to justify the relevancy of his subpoenas. He states, for example, that the "[r]elevancy here is [that] media outlets frame issues and report incorrect falsehoods submitted by political operatives named in Dr. Mullins's subpoenas." (R. 90, Resp. to Gov't at 4-5.) Rather than explaining the relevance of these alleged reports – which are wholly unrelated to the materials listed in the subpoenas – to the charges he offers a rambling example of allegedly false reports by Fox News that "lawmakers called for a federal investigation of federal funds when federal funds never were used in the Census outreach." (*Id.* at 4.)

Defendant Mullins' best relevancy argument is that the "documents requested via subpoena are crucial to show Joseph Fratto and others named in the subpoena had power to create contracts, signatory power, financial power, and great influence over all contracts during their tenure including the contracts before this Court, not Dr. Mullins." (Resp to Gov't at 3.) It is possible that evidence showing that other people – rather than Defendant Mullins – had control and made the decisions at issue in this case regarding the relevant contracts could be relevant to his defense. Defendant Mullins, however, fails to articulate the relevancy beyond this sentence and therefore has not demonstrated that he seeks specifically relevant documents rather than broad-sweeping discovery. He has not explained, for example, why the people listed would have emails or materials assisting his purported defense, or why he would need every email

7

between Mr. Fratto and each them. Defendant Mullins simply lists broad categories of documents without specifying particular documents. His mere speculation about the existence of possibly relevant documents is not sufficient to justify his subpoenas. As the Seventh Circuit has explained:

> Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial.

*Tokash*, 282 F.3d at 971.

Perhaps most troubling, Defendant Mullins failed to tailor his subpoenas to materials related to the contracts at issue in his case. Even the requests which relate to the "24-9 contracts" encompass many contracts completely unrelated to those charged in the indictment. (*See, e.g.,* Gov't Resp. at 12-13.) Indeed, "24-9 contracts" is a broad and undefined term. Furthermore, the IT Subpoena and OIIG Subpoena 2 do not contain any limitations as to the subject matter of the materials requested, or a relevant time frame. These subpoenas, therefore, are overly broad.

Additionally, Defendant Mullins has not identified any specific evidence – let alone relevant evidence – even in the requests limited to documents and materials related to the 24-9 contracts. As a result, the requests seem to be a fishing expedition and an attempt at discovery rather than a proper use of a subpoena pursuant to Rule 17(c). *See Carter*, 65 Fed. Appx. at 561 ("Rule 17, however, is not intended to function as a broad discovery device, and only materials that are admissible as evidence are subject to subpoena.").

Defendant Mullins argues that the IT Subpoena and OIIG Subpoena 1 are not overly broad because they are "specific by name." (*See e.g.,* Resp. to OIIG ¶ 7.) This limitation does

not save these subpoenas. He provides no citation to support his proposition that providing names of document custodians alone makes a request sufficiently tailored. Although providing names is a step in the right direction, here it is insufficient because, as discussed above, Defendant Mullins does not provide any other limitations in the "specific by name" subpoenas – such as time frame, subject matter etc. – to tailor the request to "documents which [he] knows to contain relevant evidence." *Tokash*, 828 F.3d at 971. As a result, the IT Subpoena alone "seeks hundreds of thousands of emails." (Gov't Resp. at 10.) Defendant Mullins has provided no justification for such broad-sweeping requests.

Defendant Mullins further argues that these "specific by name" subpoenas are not burdensome or oppressive because Cook County and the OIIG merely need to search for the requested emails by the names or addresses of those listed in the subpoenas and then press the print button. (Resp. to OIIG ¶ 6; Resp. to Cook ¶ 8.) Cook County explains, however, that it has switched technology systems from a "retired" technology it previously used and, therefore, may need to hire an outside vendor at substantial cost to recreate the previous system, if it is even possible to retrieve data in a readable format. (R. 89, Cook County Reply ¶ 3.) Furthermore, the OIIG states that "it does not have access to emails for its office email account for the period prior to January 2010 as the email address was changed, and there are no anonymous emails on the OIIG office email account for the period from January 2010 through January 2011." (OIIG Mot. ¶ 8.)

Defendant Mullins also has not explained why documents regarding the Mortgage Foreclosure Mediation Program (the "Program") – requested in the Purchasing Subpoena – have any relevance to his case. First, the Program or contracts related to the Program are not at issue

9

in this case. Second, Defendant Mullins acknowledges that the contracts related to the Program differ from those at issue in his case because the former "did not go through a bidding process" while the "contracts at issue before this Court did." (Resp. to Gov't at 6.) He argues, however, that the Program somehow relates to allegations that he had "influence" and "access" over the contracts at issue. (Resp. to Gov't at 5-6.) Specifically, he claims that contracts relating to the Program went to friends and co-workers of John Daley showing that Mr. Daley – not Defendant Mullins – had "influence" and "access" in Cook County government. (*Id*. at 6.) Even if it might be relevant that John Daley, or anyone else, had influence and access regarding other contracts unrelated to those at issue here – which Defendant Mullins has not established – Defendant Mullins has not shown that the broad list of documents he seeks regarding the Program would contain relevant information to the contracts at issue or his defense in this case. *See Tokash*, 282 F.3d at 971. The Court will not allow Defendant Mullins to proceed with a fishing expedition regarding contracts with which he admits "he was not involved" and which are not at issue. (Resp. to Gov't at 7.) Simply put, Mr. Mullins cannot use Rule 17(c) as a discovery mechanism. *Id*; *see also Bowman Dairy Co. v. United States*, 341 214, 219-21(1951) ("Rule 17(c) was not intended to provide an additional means of discovery" but rather "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials").

## CONCLUSION

For the foregoing reasons, the Court grants both motions to quash.

**DATED: July 11, 2013**

                                             **ENTERED**

                                             **AMY J. ST. EVE**
                                             **United States District Court Judge**